RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0225p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

BRIAN B. DEVEREUX; RENEE DEVEREUX,

> *Plaintiffs-Appellees*,

*v.*

KNOX COUNTY, TENNESSEE,

> *Defendant-Appellant*.

No. 19-6071

─────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:17-cv-00197—J. Ronnie Greer, District Judge.

Argued: March 23, 2021

Decided and Filed: September 22, 2021

Before: BATCHELDER, GRIFFIN, and STRANCH, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** David S. Wigler, KNOX COUNTY, TENNESSEE, Knoxville, Tennessee, for Appellant. Richard Everett Collins, II, STANLEY, KURTZ & COLLINS, PLLC, Knoxville, Tennessee, for Appellees. **ON BRIEF:** David S. Wigler, KNOX COUNTY, TENNESSEE, Knoxville, Tennessee, for Appellant. Richard Everett Collins, II, STANLEY, KURTZ & COLLINS, PLLC, Knoxville, Tennessee, for Appellees.

─────────────────

## OPINION

─────────────────

JANE B. STRANCH, Circuit Judge. Brian Devereux suffered a major stroke during or around the period of his custody by Knox County for misdemeanor first-time DUI. Corrections

officers were in and out of the holding cell where he sat motionless for several hours but did not provide medical attention until it was too late to mitigate the stroke's effects. Devereux and his wife, Renee Devereux,[1] sued the officers and Knox County. They brought federal civil rights claims as well as negligence claims under the Tennessee Governmental Tort Liability Act, which waives sovereign immunity for certain claims, but not those arising from "civil rights." After years of litigation, the district court dismissed all of Devereux's claims against the officers as well as his civil rights claims against Knox County. It then declined to exercise supplemental jurisdiction over the TGTLA claims and dismissed them without prejudice, allowing Devereux to refile them in state court. Knox County objects, arguing that the district court should have retained jurisdiction and determined that the TGTLA's "civil rights exception" necessarily barred Devereux's negligence claims. The parties also move to certify a question about the civil rights exception's timing and scope to the Tennessee Supreme Court. We **VACATE** the district court's 2018 order denying Knox County's first motion to dismiss only as to its rationale regarding the TGTLA negligence claim and **VACATE** the portion of the district court's order of September 11, 2019, that relied on that vacated part of the district court's 2018 order, **AFFIRM** its judgment in all other respects, and **DENY** the parties' joint motion to certify.

## I. BACKGROUND

### A. Factual Background

Late in the afternoon of June 3, 2016, Devereux turned himself in to the Knox County Detention Facility to serve his sentence for a misdemeanor first-time DUI conviction. About an hour later, he sat on a bench in a holding cell, which was monitored by a video camera (with no audio), where he remained motionless and unresponsive for about six hours. During this time, multiple corrections officers entered and exited the cell, carrying out their normal tasks, and fellow detainees tried to wake Devereux (sometimes while officers were in the cell). Eventually, officers and a nurse brought medical equipment; when an ambulance arrived, medical personnel found Devereux "lying on the floor," "hypotensive and hypoxic with a diminished respiratory drive and shallow breath sounds" as well as "unconscious and only responsive to pain."

---

[1]Because the majority of the Devereuxs' claims are asserted by Brian Devereux alone, we will typically refer to the appellants as just "Devereux."

Devereux was brought to the University of Tennessee Medical Center, where he remained for 10 days.  An MRI showed that he had suffered a stroke and associated injuries, causing "permanent neurologic injury."  In the opinion of Dr. Kenneth Gaines, Devereux's treating neurologist, the stroke occurred shortly after he entered the holding cell.  Devereux, who worked as a mechanical engineer, now experiences "significant cognitive impairment" and has "poor fine motor control and a tremor that interferes with activities of daily living," among other medical conditions.  He asserts that had he received treatment earlier, it is likely that his injuries would have been substantially mitigated.

### B.  Procedural Background

Brian and Renee Devereux brought claims against the corrections officers (the "individual Defendants") and Knox County under 42 U.S.C. § 1983 and the Eighth Amendment for "deliberate indifference to and violation of Brian Devereux's right to be provided adequate medical care for a serious medical need."  In a separate claim, Devereux contended that the individual Defendants and Knox County "owed [him] a duty to provide him adequate medical care while he was in custody" and breached that duty, negligently violating their statutory duty to "[s]ee that when sick [he had] proper medicine and medical treatment."  Tenn. Code Ann. § 41-2-109(5).  This count also asserted that the individual Defendants and Knox County were "negligent per se for not complying with various provisions of state-established minimum standards for jail facilities."

In July 2017, Knox County filed a motion to dismiss for failure to state a claim ("first motion to dismiss").  It argued that sovereign immunity barred the state-law claims under the "civil rights exception" in the TGTLA, *see* Tenn. Code Ann. § 29-20-205(2), and that Devereux failed to allege facts sufficient to allow the factfinder to determine "that Knox County has customs, policies[,] or practices that encouraged deliberate indifference to serious medical needs."  The individual Defendants filed a motion for judgment on the pleadings and a motion for summary judgment, both based on qualified immunity.  Knox County then filed a motion for summary judgment, incorporating the arguments from its pending first motion to dismiss.

In September 2018, the district court granted in part and denied in part Knox County's first motion to dismiss, leaving only the TGTLA negligence claims against it. It concluded that "Knox County has established that it is entitled to dismissal of Mr. Devereux's municipal-liability claim under § 1983 but has failed to show, under the TGTLA's civil rights exception, that it is entitled to dismissal of Mr. Devereux's negligence claim." The court also opined that Tennessee law allowed a TGTLA claim to stand alone, without an accompanying civil rights claim.

In October 2018, Knox County filed a second motion to dismiss, this time for lack of subject-matter jurisdiction ("second motion to dismiss"). It also moved the court to certify to the Tennessee Supreme Court a question about the point in the litigation at which a district court should determine its subject-matter jurisdiction over TGTLA claims when the plaintiff also brings claims under § 1983.

During extensive motion practice, the parties disputed the admissibility of the testimony of Dr. Gaines, the neurologist who treated Devereux and who Devereux sought to introduce as an expert. The district court ultimately excluded Dr. Gaines's testimony because the disclosures were inadequate—and because Devereux did not respond to the individual Defendants and Knox County's renewed motion to exclude and instead raised his arguments in objections to the magistrate judge's order. The court remarked:

> The Court begins by emphasizing—as [the magistrate judge] did—the importance of Dr. Gaines' testimony about the timing of the stroke. Dr. Gaines is Plaintiffs' only expert witness, so his testimony that Mr. Devereux suffered a stroke in the Knox County Jail is, by every appearance, necessary to establish a violation under 42 U.S.C. § 1983—specifically, to establish that a delay in medical treatment resulted in a constitutional violation.

(R. 135, Order, PageID 1382 (citations omitted))

On September 11, 2019, the district court also granted the individual Defendants' motion for summary judgment on the § 1983 claims but denied Knox County's second motion to dismiss and motion to certify. The court noted that without Gaines's declaration, "the remaining evidence in the record suggests that Mr. Devereux suffered a stroke *after* he was transported from the Knox County Jail to the hospital." The court declined to exercise supplemental

jurisdiction over the TGTLA claims and dismissed them without prejudice, allowing refiling in state court. And it dismissed all remaining motions, including Knox County's motion for summary judgment, as moot. Devereux refiled his TGTLA claims against Knox County in state court, and the state court entered an agreed order staying that case pending this appeal. Agreed Order for Stay of Proceedings, *Devereux v. Knox County*, No. 3:354-19 (Tenn. Cir. Ct. Knox Cnty. Jan. 16, 2020).

The parties filed notices of appeal, but all except Knox County voluntarily dismissed their appeals. Knox County appealed the district court's September 11, 2019, order. Subsequently, Devereux and Knox County filed a joint motion asking us to certify the following question to the Tennessee Supreme Court:

> When does the GTLA's civil rights exception attach in a case where, as here, the plaintiff's complaint avers claims against a Tennessee municipality under both 42 U.S.C. § 1983 (civil rights) and the GTLA (negligence) in the same action under the same underlying facts?

(Dkt. 34-1 at 2)

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's denial of a motion to dismiss for lack of subject-matter jurisdiction or failure to state a claim. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016); *Beydoun v. Sessions*, 871 F.3d 459, 464 (6th Cir. 2017). We review a district court's denial of a motion to certify a question to a state court for abuse of discretion. *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 930 (6th Cir. 2020).

### B. The Civil Rights Exception and Knox County's Motions

The civil rights exception provides that Tennessee governmental entities do not waive their sovereign immunity "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment" if "the injury arises out of . . . [f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of

mental anguish, invasion of right of privacy, or *civil rights*." Tenn. Code Ann. § 29-20-205 (emphasis added).**2** Noting that this "exception has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution," we have held that "the plain language of the TGTLA preserves immunity for suits claiming negligent injuries arising from civil rights violations." *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010). In *Johnson*, the plaintiff brought a Fourth Amendment claim under § 1983 and sought to add Tennessee-law claims alleging negligence by an emergency dispatcher. *Id.* at 867, 871. The district court denied her motion to amend on the ground that the civil rights exception would render the additional negligence claim futile. *Id.* at 871. On de novo review, we affirmed the decision, finding that the negligence claim "arises out of the same circumstances giving rise to her civil rights claim under § 1983" and "therefore falls within the exception." *Id.* at 872.

We have since applied *Johnson*'s analysis to similarly parallel civil rights and negligence claims. *See Savage v. City of Memphis*, 620 F. App'x 425, 429–30 (6th Cir. 2015); *Bryant v. City of Memphis*, 644 F. App'x 381, 384 (6th Cir. 2014). Tennessee courts have typically done the same. *See, e.g.*, *Siler v. Scott*, 591 S.W.3d 84, 96–98 (Tenn. Ct. App. 2019), *appeal denied* (Oct. 11, 2019); *Cochran v. Town of Jonesborough*, 586 S.W.3d 909, 914–21 (Tenn. Ct. App. 2019), *appeal denied* (Aug. 4, 2019); *Merolla v. Wilson County*, No. M201800919COAR3CV, 2019 WL 1934829, at *4–6 (Tenn. Ct. App. May 1, 2019), *appeal denied* (Sept. 18, 2019).

In Tennessee, when a plaintiff's civil rights claim is dismissed for failure to state a claim, it remains an open question whether the district court must necessarily reach the parallel TGTLA negligence claim or can instead decline to exercise supplemental jurisdiction. We have likewise not conclusively answered the question but have touched upon adjacent issues. In *Bryant*, the plaintiff brought an employment discrimination claim under 42 U.S.C. § 1981, which the district court construed as having been brought under § 1983 and then dismissed. 644 F. App'x at 384; *see Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (per curiam). He also brought a claim for negligent training, which the court dismissed under the civil rights exception. *Bryant*, 644 F. App'x at 384. On appeal, Bryant argued that "if the district court had dismissed his improperly brought § 1981 claim, there would have been no civil-rights bypass to the City's liability for

---

**2**Though this statute has been amended since the events in this case, this provision remains the same.

negligent training." *Id.* (emphasis removed). Without commenting on whether this reasoning was valid, we held that the district court acted properly by recasting the § 1981 claim. *Id.* Meanwhile, prior to *Johnson v. City of Memphis*, we analyzed a district court's decision that "did not consider the distinction between a cause of action based on [a civil rights violation] and one based on allegations of . . . independently negligent acts," when the latter included other circumstances that were both "temporally and factually distinct." *Partee v. City of Memphis*, 449 F. App'x 444, 449 (6th Cir. 2011). While noting that "Tennessee state courts have not explicitly determined whether the limited factual overlap between these claims would be sufficient to render the City immune from the [negligence] claim under the GTLA," we declined to reach the issue of whether the GTLA barred the negligence claim because it was unnecessary to resolving the appeal. *Id.* at 449–50.

In a similar situation, another Tennessee federal court recently employed the same jurisdictional procedure as the district court did here. In *Blevins v. Marion County*, No. 1:18-CV-53, 2020 WL 3036359 (E.D. Tenn. June 5, 2020), the plaintiff, a pretrial detainee, "had a stroke and was not treated for 'several hours' afterwards." *Id.* at *2. Like Devereux, she brought federal civil rights claims in addition to claims for "violation of [Tenn. Code Ann.] § 41-2-109" and "state-law negligence" against individual defendants and Marion County. *Id.* at *3. On the defendants' motions to dismiss for failure to state a claim and for summary judgment, the district court dismissed Blevins's civil rights claims. *Id.* at *4–12. Finding that her state-law claims were "predicated on Defendants' alleged violation of her civil rights in denying her medical care," the court ruled that the civil rights exception afforded Marion County immunity from those claims, but that Blevins could maintain them against the individual defendants. *Id.* at *9. The district court declined to exercise supplemental jurisdiction over the state-law claims due to "the interests of judicial economy and abstention from needlessly deciding state-law issues." *Id.* at *13.

In earlier comparable cases, Tennessee courts offered no indication that this procedure posed a problem. *See, e.g.*, *Payne v. Tipton County*, 448 S.W.3d 891, 894 n.1 (Tenn. Ct. App. 2014), *appeal denied* (Sept. 18, 2014); *Payne v. Tipton County*, No. 05-2310 MAP, 2006 WL 1967046, at *2 (W.D. Tenn. July 12, 2006); *Parker v. Henderson County*, No. W2009-00975-

COA-R3-CV, 2010 WL 377044, at *2 n.2 (Tenn. Ct. App. Feb. 4, 2010); *Parker v. Henderson County*, 450 F. Supp. 2d 842, 857 (W.D. Tenn. 2006). Nor has our court found this procedure objectionable. *See, e.g.*, *Siler v. Webber*, No. 3:05-CV-341, 2009 WL 10680025, at *6 (E.D. Tenn. Jan. 27, 2009) (declining to exercise supplemental jurisdiction over TGTLA claims), *aff'd*, *Siler v. Webber*, 443 F. App'x 50 (6th Cir. 2011).

Decisions by district courts to decline supplemental jurisdiction over TGTLA claims remaining after dismissing the core civil rights claims generally draw on our decision in *Gregory v. Shelby County*, 220 F.3d 433 (6th Cir. 2000). There, the court dismissed the plaintiff's TGTLA claims against a corrections officer, declining to exercise supplemental jurisdiction. *Id.* at 445. We affirmed, highlighting that 28 U.S.C. § 1367(c) allows district courts to decline supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction" and that Tenn. Code Ann. § 29-20-307 confers upon Tennessee circuit courts "exclusive original jurisdiction" over TGTLA claims. *Gregory*, 220 F.3d at 446. We emphasized that "[i]n this instance, the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." *Id.*

Federal district courts in Tennessee have echoed this point, noting that it "is even more compelling where . . . the underlying federal claim has been dismissed." *Payne*, 2006 WL 1967046, at *2; *see also Parker*, 450 F. Supp. 2d at 857; *Siler*, 2009 WL 10680025, at *6 (collecting cases). That is exactly what the district court did here, citing *Gregory*. And that is substantially what happened in the cases that Knox County cites. *Cochran*, 586 S.W.3d at 911–12; *Cochran v. Town of Jonesborough*, No. 2:17-CV-44, 2018 WL 1144816, at *7 (E.D. Tenn. Mar. 2, 2018); *Siler*, 591 S.W.3d at 92; *Siler*, 2009 WL 10680025, at *1.

Knox County argues that *Gregory* is entirely inapplicable, contending that it "cannot be read as creating a categorical rule precluding supplemental jurisdiction over TGTLA claims in every case." True, *Gregory* creates no categorical bar—or requirement. *Gregory* simply holds that it is valid, under 28 U.S.C. § 1367, for a district court to exercise its discretion to decline to retain supplemental jurisdiction. That holding is consistent with the actions of the district court here and those taken in cases like *Blevins*. Knox County then argues that our decisions in

*Briscoe v. Fine*, 444 F.3d 478 (6th Cir. 2006), and *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716 (6th Cir. 1994), control over *Gregory*. But Knox County's lengthy quotation from *Briscoe* refers to the court's jurisdiction to hear a cross-appeal about whether a dismissal of pendent state-law claims should have been with prejudice—not at issue here—and the remainder of the case concerns the application of ERISA—a federal law, unlike the TGTLA. 444 F.3d at 495–501. And the possibility of undue prejudice to a defendant resulting from a dismissal without prejudice which *Grover* discusses seems minimal when applied to this case. *See* 33 F.3d at 718–19. Tennessee courts, moreover, have regularly countenanced federal district courts' dismissals without prejudice of TGTLA claims. Finally, there is no need here to resolve the issue of whether speculative prejudice to a defendant can ever outweigh the strong preference of the Tennessee legislature to have Tennessee courts decide those claims.

Knox County also posits that declining to exercise supplemental jurisdiction over TGTLA claims after dismissing federal civil rights claims will lead to procedural maneuvering that will deprive Tennessee governmental entities of a meaningful opportunity to assert sovereign immunity. But denials of motions to dismiss that assert sovereign immunity are immediately appealable as collateral orders. *Town of Smyrna v. Mun. Gas Auth. of Georgia*, 723 F.3d 640, 645 (6th Cir. 2013); *Kelly v. Great Seneca Fin. Corp.*, 447 F.3d 944, 948 (6th Cir. 2006). That provides an appropriate opportunity for Tennessee governmental entities to litigate and vindicate any sovereign immunity they can validly assert.

And that remains a secondary issue because the Tennessee Court of Appeals has already threaded the needle on this argument:

> [W]e are . . . unpersuaded by Appellant's argument that because the district court dismissed Appellant's federal claims at the summary judgment stage, there were no civil rights violations, and section 29-20-205(2) [the civil rights exception] is thereby inapplicable. Appellant asserts in his brief that "the [f]ederal [c]ourt specifically found, based on the [d]efendants['] [m]otions, that there were no 'civil-rights' violations." Respectfully, we disagree. Nothing in the language of section 29-20-205(2) indicates that there must be an express finding that a civil rights violation occurred in order for the exception to apply. Indeed, immunity offered by section 29-20-205 is broad, preserving immunity for negligence claims so long as the "injury arises out of . . . civil rights." Tenn. Code Ann. § 29-20-205(2). Here, there is no dispute that Appellant originally claimed that his injuries arose from violations of his civil rights . . . . As such, the district court

never concluded that the injuries alleged by Appellant did not sound in civil rights; rather, the district court simply concluded that Appellant failed to put forth sufficient evidence at the summary judgment stage to proceed with his action. Moreover, none of the cases discussed herein indicate that section 29-20-205(2) requires the claimant to be successful in his or her civil rights claim in order for the civil rights exception to apply to corresponding state law claims. As such, Appellant's argument in this regard is simply without basis.

*Cochran*, 586 S.W.3d at 919–20; *see also Siler*, 591 S.W.3d at 97.

This is very similar to the situation presented here. When confronting issues of state law, we view intermediate state appellate courts' decisions as persuasive "unless it is shown that the state's highest court would decide the issue differently," and no such showing has been made here. *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). *Cochran* and cases like it counsel a particular course of action: the district court may decline to exercise supplemental jurisdiction over TGTLA cases, leaving it to the Tennessee courts to decide those claims in the first instance. As in *Cochran*, it could be that once in state court, TGTLA claims that arose from the same set of facts as the federal civil rights claims decided in federal court are unlikely to succeed. But as *Cochran* and cases like it indicate, Tennessee's courts are best situated to resolve that question. Thus, under governing precedent, the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over Plaintiffs' TGTLA claims.

Knox County also contends that the district court's order denying its first motion to dismiss (asserting sovereign immunity on the TGTLA claims because they arose from his civil rights claims) is unduly prejudicial because collateral estoppel will prevent it from litigating that issue in state court. That September 2018 order stated:

> But the Court has no need to determine whether Mr. Devereux's negligence claim arises out of his § 1983 claim because it has already concluded that his § 1983 claim requires dismissal, leaving no civil-rights claim standing against Knox County. *Without an existing civil-rights claim from which the negligence claim against Knox County can "directly flow," . . . the negligence claim cannot come within subsection 29-20-205(2)'s civil-rights exception.* The viability of this claim now simply depends on whether Mr. Devereux has pleaded sufficient facts under each of the elements that comprises a negligence claim under Tennessee law . . . . Knox County, however, does not challenge the sufficiency of the allegations as they pertain to the elements of Mr. Devereux's negligence claim itself. The Court therefore offers no opinion as to whether Mr.

Devereux states a plausible negligence claim under Tennessee law, and it will allow this claim to survive dismissal.

(R. 75 at PageID 551 (emphasis added))

In its later order of September 11, 2019, the district court described its previous order:

[T]he Court dismissed Mr. Devereux's municipal liability claim against Knox County, but it declined also to dismiss Mr. Devereux's negligence claim against Knox County under the TGTLA's civil-rights exception, observing that, under Tennessee law, a TGTLA claim could potentially stand alone—that is, without an accompanying civil-rights claim under § 1983.

(R. 136 at PageID 1405)

At the time of its decision on Knox County's first motion to dismiss, the district court did not have the benefit of the decision of the Tennessee Court of Appeals in *Cochran*. By the time the district court entered its order of September 11, 2019, *Cochran* had been published, but the district court did not address it. This timing notwithstanding, "[t]he general rule . . . is that an appellate court must apply the law in effect at the time it renders its decision." *Henderson v. United States*, 568 U.S. 266, 271 (2013) (second alteration in original) (quoting *Thorpe v. Hous. Auth.*, 393 U.S. 268, 281 (1969)).

*Cochran* suggests that the district court's statement—that the civil rights exception can only apply if a civil rights claim is currently pending—was erroneous. The court was correct that after it dismissed Devereux's municipal liability claim against Knox County, no civil rights claims were pending. But under *Cochran*, the issue is whether the claims "did not sound in civil rights," and the presence of a civil rights claim is not strictly necessary for the civil rights exception to apply to parallel TGTLA claims. *Cochran*, 586 S.W.3d at 920. Given the district court's now-incorrect statement of law, concern regarding collateral estoppel in subsequent proceedings is justified because "even an erroneous judgment is entitled to preclusive effect as long as all the other prerequisites have been met." *Mullins v. State*, 294 S.W.3d 529, 537 n.3 (Tenn. 2009). And here, when the mandate in this case becomes effective, the issue will have been fully "actually raised, litigated, and decided on the merits" in the earlier proceeding (this case), with the decision made final, and with Knox County having "had a full and fair opportunity" to argue the matter. *Id.* at 535.

The best approach on this record, then, is to give the Tennessee courts a fresh opportunity to consider whether Plaintiffs' TGTLA claims against Knox County "did not sound in civil rights," *Cochran*, 586 S.W.3d at 920, per the Tennessee legislature's strong preference.  We therefore vacate the rationale of the district court's 2018 order on Knox County's first motion to dismiss regarding the TGTLA claim (R. 75 at PageID 551), and do so in order to prevent any issue of collateral estoppel in state court based on this aspect of the district court's reasoning. We also vacate the part of the district court's order of September 11, 2019 (R. 136 at PageID 1404–06), which relies on that aspect of the district court's 2018 order.  We do not disturb the remainder of the district court's order of September 11, 2019.

## C. Motion to Certify

Tennessee, like other states, invites federal courts of appeals to certify questions of law, which its Supreme Court may answer at its discretion.  Tenn. Ct. R. 23(1).  The certifying court must "determine[] that, in a proceeding before it, there are questions of [Tennessee] law . . . which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee."  *Id.*  Tennessee's rule mirrors our explanation that certification "is a matter within the discretion of the court" and is "most appropriate when the question is new and state law is unsettled."  *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015) (quoting *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995)).  We do "not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks."  *Id.* (quoting *Pennington v. State Farm Mut. Auto. Ins. Co*, 553 F.3d 447, 450 (6th Cir. 2009)).  Instead, "[w]hen we see a reasonably clear and principled course, we will seek to follow it ourselves"; "[t]he state court need not have addressed the exact question, so long as well-established principles exist to govern a decision."  *Id.*  Certain procedural concerns matter when deciding a motion to certify, including that "the appropriate time for a party to seek certification of a state-law issue is before, not after, the district court has resolved the issue."  *Id.*

Certification of the question the parties have proposed is not warranted here.  As discussed above, there exists sufficient Tennessee appellate case law addressing questions similar to the one the parties seek to certify.  The broad ruling that the parties would have the

Tennessee Supreme Court make is not necessary to resolve this case. Moreover, given that the Tennessee legislature strongly prefers that Tennessee courts adjudicate TGTLA claims (and matters of Tennessee law in general), there is no need to impose the delays that would result from invoking the certification procedure when the option of letting the parties litigate this issue in Tennessee courts alone is readily available.

## III. CONCLUSION

For the reasons discussed above, we **VACATE** the portion of the district court's 2018 order denying Knox County's first motion to dismiss the Devereuxs' TGTLA claims only as to its rationale regarding the TGTLA negligence claim and also **VACATE** the portion of the district court's order of September 11, 2019, that relied on the vacated part of its 2018 order. We **AFFIRM** the district court's judgment in all other respects, and **DENY** the parties' joint motion to certify.